Robert Peterson,  )   C/A No. 2:09-1800-JFA-RSC
             )
    Plaintiff,  )
             )
versus       )
             )
             )   **REPORT AND RECOMMENDATION**
Ronald Myers (ASGDC Director),  )
Sgt. Legette (Shift Supervisor), )
Sgt. Waters (Shift Supervisor),  )
Officer Washington (Unit Officer), )
             )
    Defendants.  )

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a former pretrial detainee now a state prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

1

recommendation on the defendants' motion for summary judgment. 28 U.S.C. § 636(b).

On July 9, 2009, the plaintiff, Robert Peterson, brought this action alleging that medical restrictions that he not climb stairs were ignored which caused him to fall, that it took an hour for an ambulance to transport him to the hospital, and that the Alvin S. Glenn Detention Center (ASGDC) has not taken proper steps to obtain an accurate diagnosis so that he can obtain proper medical treatment and physical therapy. He named as defendants Ronald Myers (ASGDC Director), Sgt. Legette (Shift Supervisor), Sgt. Waters (Shift Supervisor) and Officer Washington (Unit Officer). Plaintiff seeks damages.

The defendants assert they have not violated any of the plaintiff's rights, as the plaintiff had no medical restriction prohibiting stairs at the time he was moved upstairs. Further, the defendants aver they are not responsible for the plaintiff's medical care and they are not involved in any medical decisions. Lastly, they argue that they are entitled to qualified immunity.

The defendants filed a motion for summary judgment on November 23, 2009, as well as incident reports, medical records and their own affidavits. The plaintiff was provided a copy of the motion and exhibits and on March 2, 2009, the plaintiff was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal

Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The plaintiff filed his own affidavit as a response in opposition to the motion on December 17, 2009, which consisted primarily of legal conclusions. Hence, it appears consideration of the motion is appropriate.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. <u>Id.</u>, 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

3

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

**APPLICABLE LAW**

An alleged deprivation of a constitutional right of a pretrial detainee is examined under the due process clause of the Fourteenth Amendment as opposed to the cruel and unusual punishment clause of the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861 (1979). The proper inquiry under the due process clause is to determine whether the condition complained of amounts to punishment of the detainee. Id. at 535. "In order to establish that a particular condition or restriction of detention constitutes constitutionally

impermissible punishment a detainee must show either 1) an expressed intent to punish or 2) a lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992)(citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). To establish the necessary culpable intent, officials must act with deliberate indifference to the detainee's suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970(1994), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306 (1995)). Particularly, in challenging the condition, a plaintiff must prove that a "basic need" was deprived and the defendants acted with deliberate indifference. See Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993), cert. denied, 510 U.S. 949, 114 S.Ct. 393 (1993). To be deliberately indifferent, an official "must know of and disregard an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).

## DISCUSSION

A review of the record and relevant case law indicates that the defendants' motion should be granted.

Plaintiff's verified complaint[2] is,

---

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991).

5

>     On November 23, 2008, Officer Washington, Sgt. Legette,
> and Sgt. Waters, employees of Alvin S Glenn Detention
> Center, ignored orders from medical staff concerning my pre-
> existing medical condition, which henders me from properly
> utilizing stairs. Even after this was made clear, Officer
> Washington, Sgt. Legette, and Sgt. Waters, negligently
> relocate me to an upstairs cell against my wishes and the
> instruction of medical staff. On the day of this relocation,
> I suffered a severe fall while descending stairs resulting
> in additional injuries.
>     Furthermore, after staff officers contacted ASGDC
> medical staff, it took approximately one hour to arrange
> transport by Richland Memorial EMS. Additionally, since this
> incident, Alvin S. Glenn Detention Center has not taken
> proper steps to obtain a accurate diagnosis so that medical
> treatment and physical therapy can be administered.

Complaint, Statement of Claim

By affidavit, the plaintiff added that Defendant Legette moved him upstairs after the plaintiff told her that he had a medical restriction precluding his use of stairs. Off. Washington later "rushed" him down the stairs which caused the fall. Further, Washington knew of the medical restriction. Plaintiff also indicated that he sued Director Myers because he "has total operational control and failed to properly supervise." Similarly, Plaintiff sued Sgt. Waters because he is "the overall supervisor." Aff. of Peterson.

A review of the affidavits and medical records submitted by the defendants revealed the following. On November 23, 2008, defendant Legette observed the plaintiff exposing himself to her and masturbating. Under those circumstances, it is standard procedure to move the detainee to an open corner cell because

6

housing in the corner cell inhibits the detainee's ability to expose himself to others. See Aff. of Tynika Legette ¶ 4, Aff. of Robert Waters ¶ 5. Legette checked the cell assignments and saw that there was an open corner cell available on the second floor of the Center. Thereafter, she directed staff to escort the plaintiff to the cell. Id. ¶4.

The plaintiff then told Legette that he could not be housed on the second floor based on medical orders. She asked to see his "Special Needs Communication Form"[3] but the plaintiff did not have one. Aff. of Legette ¶5-7. Legette checked with the shift supervisor, but he also did not have any record of a "Special Needs Communication Form" for the plaintiff. In short, there was not any documentation at that time which prohibited Plaintiff's being housed on the second floor. Id. ¶ 8-9. Therefore, the Plaintiff was escorted to the second floor without incident. Id.

Later that evening, the plaintiff spoke to a nurse dispensing medications and the nurse then told Legette that the plaintiff should be moved from the second floor. Id. ¶ 10. Based upon the nurse's instructions, Legette called the dorm officer and instructed him to move the plaintiff back to the first floor.

---

[3] When a detainee has a housing restriction from the medical staff, he and the shift supervisor are each given a "Special Needs Communication Form" by the medical staff to alert correctional staff of the restriction. The detainee is directed to keep the Form so that he can produce it for staff if requested. Id. ¶ 6.

7

Thereafter Plaintiff fell. Following the fall, medical staff did generate two "Special Needs Communication Forms" recommending that the plaintiff be housed on the first floor. Ex. B to Aff. of Harrell Bates 8181-A-0037, 0038.

Defendants Waters and Legette attest that they have no input in medical decisions nor do they have access to an inmate's medical file. Id. ¶ 16; see also, Waters Aff. ¶ 7.

Lastly, although Plaintiff believes that Off. Washington "rushed" him down the stairs "which caused the fall", Defendant Washington was not employed at the ASGDC until December 28, 2008, over one month after the fall. See Aff. of Scoti Washington ¶ 4.

Here, it appears that the plaintiff has failed to forecast evidence which is sufficient to raise a genuine issue of material fact as to whether the defendants were deliberately indifferent to his serious needs. He has not shown that the defendants knew of and disregarded an objectively serious condition, medical need, or risk of harm, or that the defendants failed to provide for a basic need of the plaintiff. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993), cert. denied, 510 U.S. 949, 114 S.Ct. 393 (1993).

It is undisputed that when Plaintiff was reassigned to the second floor there was no required "Special Needs Communication Form" serving notice to the Officers that the medical staff recommended that he be housed on the first floor of the Center.

Plaintiff was required to present the form and he did not do so. The officer went further and checked with the shift supervisor who likewise did not have any record of a "Special Needs Communication Form" for the plaintiff. Only then did the officer take the customary step of ordering Plaintiff to be moved to an open corner cell since she observed him exposing himself. It is undisputed that such placement is routinely indicated in order to inhibit the detainee's ability to expose himself to others and, thus, the move served a legitimate non-punitive purpose.

As to the move from the second floor to the first floor during which the plaintiff fell, the only allegation is that Defendant Off. Washington "rushed" him, along with Plaintiff's conclusion that that caused his fall. Disregarding for purposes of summary judgment that Washington has sworn that she was not even employed at the AASGDC until a month after the fall, Plaintiff's impression that he was "rushed" does not approach meeting his burden to demonstrate that the defendant knew of and disregarded an excessive risk to his safety[4]. See, e.g., Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492 (1986).

Further, the Plaintiff indicated in his complaint, that the

---

[4] Interestingly, the "Special Needs Communication Form" which was eventually generated recommended housing Plaintiff on the first floor "due to back problems Has difficulty going up & down stairs **routinely**". (sic) (emphasis added).

defendants "negligently relocate me to an upstairs cell... ." It does appear that, at most, Plaintiff is asserting a negligence cause of action. Negligence is not a constitutional violation under 42 U.S.C. § 1983; Plaintiff's Complaint fails to state a claim on which relief can be granted. See <u>Davidson v. Cannon</u>, 474 U.S. 344, 345-48 (1986) ("[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required."). Deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S.Ct. 1970 (1994); <u>Grayson v. Peed</u>, 195 F.3d 692, 696 (4th Cir. 1999) ("Deliberate indifference is a very high standard-a showing of mere negligence will not meet it.").

As for the allegation that the defendants are somehow constitutionally liable for any perceived shortcomings in the medical care he has received at the ASGDC, Plaintiff has offered no evidence that the defendants acted in a manner which was deliberately indifferent to Plaintiff's medical needs. Corrections officials are entitled to rely on the expertise of medical doctors in treating medical conditions of the detainees. <u>Miltier v. Bourne</u>, 896 F.2d 848, 854-55 (4th Cir. 1990); <u>Shakka v. Smith</u>, 71 F.3d 162, 167 (4th Cir. 1995) (same). This claim should fail.

Additionally, to the extent Waters is named as a defendant

because, as the plaintiff explained in his complaint, he is the "overall supervisor" and that Myers is named as a defendant because he "has total operational control", they should be dismissed from the action since vicarious liability theories such as respondeat superior are not actionable in a §1983 action. <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

Lastly, it also appears that the defendants' contention that they are entitled to qualified immunity in their individual capacities is correct and is an alternate ground for dismissal of the action. <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727 (1982).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted, any outstanding motions be denied as moot, and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

February 23, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>P.O. Box 835
>Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).